UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ZIMMER DUROM HIP CUP PRODUCTS LIABILITY LITIGATION | 2:09-cv-04414-SDW-SCM |
| This Document Relates To: | MDL-2158 |
| *Christine Brady v. Zimmer, Inc., et al.,* Case No. 2:10-cv-03043 | |

**DEFENDANTS' MOTION FOR BIFURCATION AND SEPARATE JURIES
IN RESPONSE TO 4-16-15 MDL TEXT ORDER, DKT. NO. 80**

### I. Introduction

The parties agree that Mrs. Brady's claim is subject to a one-year statute of limitations under Louisiana law. Defendants ("Zimmer") submit that they have shown indisputably through the factual record that Brady had actual or constructive knowledge of her claim outside of the one-year prescriptive period and that they are entitled to summary judgment on that basis. *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 300 (5th Cir. 1999) ("[T]he prescriptive period commences when there is enough notice to call for an inquiry about a claim, not when an inquiry reveals the facts or evidence that specifically outline the claim." (citing *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997))). If, however, the Court denies summary judgment by finding a question of fact as to Brady's actual or constructive knowledge, Zimmer respectfully submits that this Court should bifurcate and try first the statute of limitations question to a separate jury.

A bifurcated trial is required and makes sense for several reasons. First, the Court has broad discretion to bifurcate issues in the interest of efficient case management. Bifurcation of the statute of limitations issue could shorten a four-week trial to a mere two days, conserving substantial judicial resources and jury time.

ME1 20220213v.1

Second, bifurcation with a separate jury to hear the merits of the product liability claim eliminates the evidentiary problem and prejudice caused by (a) Brady's doctor's unsubstantiated and non-expert opinion that the Durom Cup was defective, and (b) Brady's settlement discussions with Zimmer in 2008 outside the statute of limitations period. Though that evidence is critical to her notice of a potential claim against Zimmer and is therefore not only relevant but critical to the running of the statute of limitations period, the same evidence is inadmissible as to the merits of Brady's product liability claim. *See* 4-10-15 Zimmer Motions in Limine Nos. 6 & 8(B), Dkt. Nos. 66 & 68 (regarding doctor's inadmissible opinion).

Third, this proposal will not prejudice Brady. Instead, Brady will enjoy similar economic advantages, particularly the potential to avoid the expense of arrangements for witnesses including Brady's four expert witnesses. If Brady somehow establishes that her claim was timely filed, then the merits of her product liability claim could be tried without any further reference to or discussion of the statute of limitations. A second jury would be immune from any lingering doubt on that issue.

Because the issues proposed to be tried separately are unrelated—with the statute of limitations issue being strictly procedural and the product liability claim being substantive—this case presents an ideal scenario for bifurcation and separate juries (if necessary). Such an order is well within this Court's discretion and would reflect an exercise of prudent case management.

## II. Bifurcation Of The Statute Of Limitations Issue Is Warranted

### A. This Court Has Broad Discretion To Bifurcate, and Bifurcation Will Serve Judicial Economy.

District courts have broad discretion to order separate trials of discrete issues under Federal Rule of Civil Procedure 42(b). *See Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) (per curiam); *see also Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d

Cir. 1978) ("[T]he rule in this circuit since 1972 has been that the decision to bifurcate [v]el non is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge"). In determining whether to bifurcate, district courts must "weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984).

The Third Circuit and district courts within the Third Circuit affirm bifurcation when it is calculated to reduce the length of a trial and otherwise promote judicial economy. *See In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997) ("[B]ifurcation preserved judicial resources and reduced the expense of the parties, and the district court did not abuse its discretion in ordering such a process").[1] This Court itself has recognized the benefits of bifurcation in carving out discrete issues for individual consideration. *See Warner Lambert Co. v. Purepac Pharm. Co.*, 2000 U.S. Dist. LEXIS 22559 (D.N.J. December 22, 2000) (bifurcating patent and unfair competition claims). Indeed other courts have bifurcated statute of limitations issues under Rule 42(b) for precisely the reasons Zimmer advances.[2]

---

[1] *See also Emerick*, 750 F.2d at 22 (affirming bifurcation of trial into liability and damages phases); *Franklin Music Co. v. American Broad. Co.*, 616 F.2d 528, 538 (3d Cir. 1980) (same); *White v. SMI of Pattison Ave., L.P.*, No. C.A.92-1724, 1998 WL 633697, at *5 (E.D. Pa. Aug. 11, 1998) (bifurcating liability and damages phases of trial because "[i]t would be a waste of everyone's time and the jury's time to hear evidence on damages if the jury found the defendants were not liable for the injuries in the first place"); *Tabas v. Tabas*, No. CIV.A. 91-1355, 1996 WL 107848, at *2 (E.D. Pa. Mar. 12, 1996) (bifurcating liability and damages to potentially "spare both sides the expense of presenting the minute accounting evidence that both sides recognize this case will entail"); *Miller v. New Jersey Transit Auth. Rail Operations*, 160 F.R.D. 37, 41 (D.N.J. 1995) ("Trifurcation may actually shorten the trial"); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982) (bifurcating liability and damages to potentially spare lengthy trial), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984).

[2] *See, e.g., Gomez v. City of Torrance*, 438 Fed. Appx. 626, 628 (9th Cir. 2011) ("[D]istrict court did not abuse its discretion in bifurcating the trial into a statute of limitations phase and a liability phase because the statute of limitations issue was dispositive"); *Burgess-Lester v. Ford Motor Co.*, No. 1:06CV43, 2007 WL 3088082, at *1 (N.D. W.Va. Oct. 22, 2007) ("[B]ifurcating the

Finally, bifurcation is proper when the party opposing separate trials fails to show prejudice from bifurcation. *See Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 74 (3d Cir. 1985) (affirming district court's exercise of discretion to bifurcate fraud issue and limit discovery, noting that party opposing bifurcation failed to show prejudice); *see also U.S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 181 (3d Cir. 1981) ("The touchstone, in reviewing bifurcated proceedings, is whether the party bearing the burden of proof was unfairly prejudiced by the procedures employed").

Bifurcation of the statute of limitations issue is appropriate here because it may save substantial Court time and resources. The statute of limitations issue undoubtedly involves fewer and less complex factual questions. Trial of that issue will consume far less of this Court's (and a jury's) time than the remaining portion of the case, which involves complex matters of product liability dependent on the testimony of numerous expert and fact witnesses. If Zimmer prevails on its statute of limitations defense, trial of the remainder of the case will be unnecessary.

### B. Bifurcation Sidesteps Significant Evidentiary Problems

This case presents prejudicial evidentiary problems bifurcation would avoid. As set forth in Zimmer's summary judgment briefs, Dr. Shahrdar's comments to Brady in August and December 2008 that the Durom Cup was defective are critical to the determination of her state of mind and notice of her claim that triggered the running of the statute of limitations period. *See, e.g.*, 1-15-15 Zimmer's Brief in Support of Motion for Summary Judgment, at 14-18, Dkt. No. 646-1.[3] Likewise, Brady calling Zimmer in 2008 to discuss settlement of her claim likewise

---

trial on the . . . statute of limitations defense would promote convenience, avoid prejudice and be conducive to expedition and judicial economy.").

[3] Dr. Shahrdar told Brady in August 2008 that her cup was loose due to a defect in the Durom Cup. Defendants' Rule 56.1 Statement, ECF No. 646-2 at ¶ 8 (citing Shahrdar Dep 229:4-13 ("Q. Did you tell her that you thought that there was a defect in her cup? A. Oh, absolutely.")).

4

establishes she was on notice. *See* 3-5-15 Zimmer's Reply Brief in Support of Motion for Summary Judgment, at 2, Dkt. No. 675.[4] If the Court finds a factual issue preventing summary judgment, then Zimmer must introduce evidence of what Brady was told and understood in 2008 so that a jury can resolve Zimmer's statute of limitations defense. But that same evidence, specifically, (1) Dr. Shahrdar's speculative and invalid opinions that the Durom Cup was defective, and (2) Brady's call to Zimmer in 2008 to settle her claim, is inadmissible with respect to the merits of Brady's product defect claim. *See* 4-10-15 Zimmer Motions in Limine Nos. 6 & 8(B), Dkt.Nos. 66 & 68 (regarding doctor's opinions); Fed. R. Evid. 408. Furthermore, the harm on the merits caused by this type of inadmissible evidence could not be cured by some confusing limiting instruction to the jury with respect to how and when this evidence could be considered. Bifurcation is the only way to avoid the prejudice that would arise from being required to introduce evidence that should be excluded in its entirety on the merits of Brady's claim.

### C. Preliminary Resolution Of The Statute Of Limitations Would Not Prejudice Brady

Brady cannot legitimately claim undue prejudice from an early, separate determination of the statute of limitations issue. Instead, both sides benefit economically if the end result

---

He opined—without any testing or having any necessary qualifications—that the product was defective. *See* 4-10-15 Zimmer Motions in Limine Nos. 6 & 8(B), Dkt. Nos. 66 & 68. And in December, he told her again of his views and that a revision surgery would be necessary. Defendants' Rule 56.1 Statement, ECF No. 646-2 at ¶ 9. Dr. Shahrdar also gave Brady a copy of an August 18, 2008 letter from Zimmer that explained that Zimmer had temporarily suspended sales of the Durom Cup because of reports of loosening in some patients and that Zimmer was willing to discuss compensation with patients requiring revision surgery. Defendants' Rule 56.1 Statement, ECF No. 646-2 at ¶¶ 5, 6, and 10.

[4] After receiving the Zimmer Letter to Patient from Dr. Shahrdar at her December 16, 2008 visit (*see* Defendants' Rule 56.1 Statement, ECF No. 646-2 at ¶¶ 12, 13), Plaintiff called Zimmer and spoke by telephone on December 18, 2008, to Doña M. Reust, Senior Paralegal for Zimmer, to discuss financial compensation related to her claim. *See* Certification of Edward J. Fanning in Support of Zimmer's Reply Brief and Response to Plaintiff's Rule 56.1 Statement, Exhibit C – Declaration of Doña M. Reust; *see* Certification of Edward J. Fanning in Support of Zimmer's Reply Brief and Response to Plaintiff's Rule 56.1 Statement, Exhibit D – Brady Dep. at 237:16 – 238:9; 239:5-7.

5

obviates the need for a much lengthier, more expensive trial. Plaintiff has listed four expert witnesses and plans to have numerous other witnesses testify live as well, including her treating physician. If these costs can be spared through preliminary adjudication of Zimmer's statute of limitations defense, that is to Brady's economic benefit. Simply put, preliminary resolution of the statute of limitations defense makes her case less expensive and less difficult to try.[5]

Bifurcation also presents logistical advantages. In a preliminary bifurcated trial of the statute of limitations issue, Zimmer would bear the burden of proof and would seek to establish Brady's knowledge through deposition designations of Dr. Shahrdar and direct examination of Brady as a hostile witness.[6] There would be no inconvenience to any of Brady's witnesses, and presumably only Brady herself would be subject to being recalled as a witness. If Brady prevailed and defeated Zimmer's statute of limitations defense, then the second bifurcated portion of the trial would resume in a traditional fashion. Plaintiff would open her case on the merits of the product liability claim unburdened by Zimmer's statute of limitations defense. This is a feasible and logical approach designed to streamline proceedings.

### III. The Court Should Empanel A Second Jury If It Is Necessary To Try The Remainder Of The Case

---

[5] To the extent Brady claims that the jury is entitled to weigh all issues together and that she is prejudiced by the fact of separate trials, such an argument reflects nothing more than hope that either the jury would ignore valid proof of Zimmer's statute of limitations defense or improperly consider such evidence on the merits of her claim. Zimmer's statute of limitations defense is strictly procedural and unrelated to the merits of whether the Durom Cup was defective, whether it caused Brady injury, and the extent of any such injury, all of the issues that Brady seeks to present and prove. Because the statute of limitations does not overlap with the merits, there is no logical or equitable reason that requires the evidence to be heard together.

[6] Any scheduling issues Plaintiff might have with Dr. Shahrdar coming to the first few days of trial do not justify denying bifurcation. First, Dr. Shahrdar's deposition is clear and unequivocal that he told her in 2008 he thought her cup was defective and she was going to have to have a revision, and Zimmer will rely on that testimony to meet its burden. (*See* Shahrdar Dep. at 229:4-9; 236:23-237:1; 237:4-6). Second, Plaintiff's scheduling issue does not outweigh prejudice of conducting an unnecessary four-week trial and admitting otherwise inadmissible opinion and settlement testimony.

If Brady convinces a jury that she timely filed her claim, then this Court should empanel a second jury to hear the merits of her claim. This is necessary because of the evidentiary problem discussed above. Although Brady's knowledge of her doctor's comments regarding alleged product defects and her settlement discussions with Zimmer are relevant to her notice of a claim, those same comments are inadmissible as to the merits of her claim, and Zimmer (and Plaintiff) are entitled to their exclusion. Calling a separate second jury solves this problem.

A separate jury presents no constitutional problem either. As the Third Circuit has explained, "[t]he Seventh Amendment requires that, when a court bifurcates a case, it must divide issues between separate trials in such a way that the same issue is not reexamined by different juries." *Paoli*, 113 F.3d at 452 n.5 (internal quotations omitted) (indicating that court could have called a second jury without a constitutional problem); *see also Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112 (D. Del. 1984) (ordering second jury for an unrelated issue in bifurcated case and noting, "The prohibition is not against having two juries review the same evidence, but rather having two juries decide the same essential issues."). Because the statute of limitations issue does not overlap with the merits of Brady's product liability claim, the same issue will not be reexamined by different juries, and no constitutional issue arises.[7]

## IV. Conclusion

In the event that this Court does not grant summary judgment, Zimmer respectfully requests that this Court bifurcate Zimmer's statute of limitations defense for a separate trial and empanel a second jury if it remains necessary to try the remainder of the case.

---

[7] Zimmer acknowledges that calling a second jury requires additional effort for the Court and staff; however, the potential time and cost savings of a two-day trial versus a four-week trial outweigh the time and resources required to empanel and voir dire a second jury.

Respectfully submitted,

By:   *s/ Edward J. Fanning, Jr.*
      Edward J. Fanning, Jr.
      **McCARTER & ENGLISH, LLP**

**FAEGRE BAKER DANIELS LLP**
Attorneys for Defendants,
  Zimmer, Inc., Zimmer Holdings, Inc.,
  Zimmer GmbH, and Wilson/Phillips
  Holdings, Inc., a/k/a Zimmer Wilson
  Phillips

Dated: April 21, 2015

## CERTIFICATE OF SERVICE

I certify that on April 21, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    J. Joseph Tanner
    joe.tanner@FaegreBD.com
    Stacy L. Prall
    stacy.prall@Faegrebd.com
    Adrienne F. Busby
    adrienne.busby@FaegreBD.com
    Andrew L. Campbell
    andrew.campbell@FaegreBD.com
    Jessica Benson Cox
    Jessica.cox@FaegreBD.com
    John T. Schlafer
    john.schlafer@FaegreBD.com
    Stephanie N. Russo
    stephanie.russo@FaegreBD.com
    FAEGRE BAKER DANIELS LLP
    300 North Meridian Street, Suite 2700
    Indianapolis, IN 46204
    317.237.0300 telephone

Regina M. Rodriguez, Esq.
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
303-607-3738
regina.rodriguez@FaegreBD.com
*Defendants' Liaison Counsel*

Edward J. Fanning, Jr.
efanning@mccarter.com
Zane C. Riester
zriester@mccarter.com
McCARTER & ENGLISH
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
973.622.4444 telephone
*Defendants' Liaison Counsel*

Wendy R. Fleishman
wfleishman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
212.355.9500 telephone
*Plaintiffs' Liaison Counsel*

George G. Tankard, III
gtankard@waterskraus.com
WATERS KRAUS & PAUL
315 North Charles Street
Baltimore, MD 21201
410.528.1153 telephone
*Plaintiffs' Liaison Counsel*

_____
Zane C. Riester

ME1 20220213v.1